# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 6938 | DATE | 10/10/2002 |
| CASE TITLE | THE MICHAEL J. BORRELLI FAMILY TRUS vs. UNUMPROVIDENT CORPORATION | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Status hearing held and continued to 10/31/02 at 9:00 a.m.. Enter Memorandum Opinion And Order. UnumProvident's motion to strike plaintiffs' cross-motion for summary judgment and deny plaintiffs' requested summary judgment relief is granted. UnumProvident's motion for summary judgment and plaintiffs' cross motion for summary judgment are denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | |
|---|---|
| | No notices required, advised in open court. |
| | No notices required. |
| | Notices mailed by judge's staff. |
| | Notified counsel by telephone. |
| ✓ | Docketing to mail notices. |
| | Mail AO 450 form. |
| | Copy to judge/magistrate judge. |

courtroom deputy's initials: LG

date docketed: OCT 11 2002

docketing deputy initials: CN

Document Number: 25

Date/time received in central Clerk's Office _____ mailing deputy initials _____

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE MICHAEL J. BORRELLI FAMILY TRUST; and NORMAN J. BUGGELE, as Trustee of the Michael J. Borelli Family Trust<br><br>Plaintiffs,<br><br>v.<br><br>UNUMPROVIDENT CORPORATION,<br><br>Defendant. | Case No. 01 C 6938<br><br>Hon. John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff, the Michael J. Borrelli Family Trust and Norman Buggele, the trustee (collectively "Plaintiffs"), filed a filed a two-count complaint against Defendant, UnumProvident Corporation. Count I seeks a declaratory judgment that Michael J. Borrelli's life insurance policy provided coverage to Michael J. Borrelli and that, as a result of his allegedly accidental death, benefits are due to the Plaintiffs. Count II alleges a breach of contract under Michael J. Borrelli's life insurance policy. The parties move for summary judgment pursuant to Federal Rule of Civil Procedure 56. UnumProvident also moves to strike Plaintiffs' motion for summary judgment as untimely. For the reasons stated herein, the parties' motions for summary judgment are denied, and UnumProvident's motion to strike is granted.

## LEGAL STANDARD

Summary judgment is appropriate when there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Cincinnati Ins. Co.*

-1-

*v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Thus, although the moving party on a motion for summary judgment is responsible for demonstrating to the court why there is no genuine issue of material fact, the non-moving party must go beyond the face of the pleadings, affidavits, depositions, answers to interrogatories, and admissions on file to demonstrate, through specific evidence, that there remains a genuine issue of material fact and show that a rational jury could return a verdict in the non-moving party's favor. *Celotex*, 477 U.S. at 322-27; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254-56 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994).

Disputed facts are material when they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507-08 (7th Cir. 1992). When reviewing a motion for summary judgment, a court must view all inferences to be drawn from the facts in the light most favorable to the opposing party. *Anderson*, 477 U.S. at 247-48; *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). However, a metaphysical doubt will not suffice. *Matsushita*, 475 U.S. at 586. If the evidence is merely colorable or is not significantly probative or is no more than a scintilla, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

### BACKGROUND

The undisputed facts taken from the parties' Local Rule 56.1(a) & (b) statements of material facts (referred to herein as "Pl.'s 56.1" and "Def.'s 56.1") and exhibits are as follows.

Michael J. Borelli ("Mr. Borelli"), now deceased, was an insured under a Group Special Risk Policy, Policy No. GSR 4745 ("the policy"), issued by Commercial Insurance Company

("Commercial Insurance") of Newark, New Jersey. (Def.'s 56.1 ¶ 1.) Commercial Insurance is now known as UnumProvident. (Def.'s 56.1 ¶ 1.) The Trust is the designated beneficiary of the policy. (Def.'s 56.1 ¶ 2.) Buggele is the administrator and trustee of the Trust. (Def.'s 56.1 ¶ 3.) UnumProvident is a corporation with its principal place of business in Tennessee. (Def.'s 56.1 ¶ 4.)

On or before January 1, 1984, Commercial Insurance issued the policy to the University of Chicago for the benefit of its employees; and the policy is now maintained by UnumProvident. (Def.'s 56.1 ¶ 6.) The policy has liability limits of $500,000 for death or bodily injury caused by an accident. (Def.'s 56.1 ¶ 7.) The policy provides:

> TO INSURE such eligible persons of the Policy Holder (herein usually called the Insured) and their eligible dependents, if any (herein called Insured Dependent) identified on the Schedule of Insureds of this policy against loss described in PART I-Description of Coverage, resulting directly and independently of all other causes from bodily injuries caused by accident occurring while this policy is in force, herein called such injuries.

(Def.'s 56.1 Ex. C.) The policy also provides that "[t]his policy does not cover loss caused by or resulting from any one or more of the following: . . . Illness, disease, pregnancy, childbirth, miscarriage, body infirmity or any bacterial infection other than bacterial infection occurring in consequence of an accidental cut or wound." (Def.'s 56.1 Ex. C.) In order to collect accidental death benefits under the policy, the insured's death must be considered accidental under the policy's provisions and must result "directly and independently of all other causes from bodily injuries." (Def.'s 56.1 ¶¶ 10, 11.) The policy does not include a medical treatment exclusionary clause. (Pl.'s 56.1 ¶ 1.)

Under the Michael J. Borrelli Family Trust Agreement, made on July 15, 1986, the proceeds under the policies of life insurance and employee benefits entered into by Mr. Borelli are to fund the

Trust. (Def.'s 56.1 ¶ 12.)

On May 20, 1999, Mr. Borrelli also suffered from non-alcoholic steato-hepatitis[1] ("NASH"). (Def.'s 56.1 ¶¶ 14, 35.) Mr. Borrelli had abnormal liver function tests for nine years prior to May 20, 1999. (Def.'s 56.1 ¶ 31.)

On May 20, 1999, Mr. Borelli was treated at MacNeal Memorial Hospital ("MacNeal") for opacification of his right lung with pleural effusion[2]. (Def.'s 56.1 ¶ 13.) On May 20, 1999, a thoracentesis[3] was performed on Mr. Borrelli by the treating doctor at MacNeal. (Def.'s 56.1 ¶ 15.) The treating doctor incorrectly performed the thoracentesis on Mr. Borrelli. (Def.'s 56.1 ¶ 16.) The incorrectly performed thoracentesis was a doctor's error. (Def.'s 56.1 ¶ 17.) The treating doctor breached the standard of care by performing the thoracentesis below the ninth rib. (Def.'s 56.1 ¶ 18.)

After Mr. Borrelli's thoracentesis, he was transferred to the recovery room, where a follow-up chest x-ray was performed. (Def.'s 56.1 ¶ 24.) Mr. Borrelli was then discharged from the hospital and returned home. (Def.'s 56.1 ¶ 25.) Shortly after returning home from his discharge from the hospital, Mr. Borrelli was found unresponsive with sinus bradycardia[4]. (Def.'s 56.1 ¶ 26.) After collapsing at home, Mr. Borrelli was transported by ambulance to Loyola University Medical Center ("Loyola"). (Def.'s 56.1 ¶ 27.) Mr. Borrelli was pronounced dead at 6:20 p.m. on May 20, 1999, at

---

[1]Non-alcoholic steato-hepatitis occurs when fat builds up in the liver, causing scar tissue, and is associated with diabetes, protein malnutrition, obesity, coronary artery disease, and corticosteroid treatment.

[2]Pleural effusion is the accumulation of fluid between the layers of the lung membranes (the pleura).

[3]Thoracentesis is a procedure to remove fluid from the space between the lungs and the chest wall.

[4]Sinus bradycardia occurs when the heart rate is slower than sixty beats per minute.

Loyola. (Def.'s 56.1 ¶ 28.)

On May 21, 1999, an autopsy was performed on Mr. Borrelli at Loyola. (Def.'s 56.1 ¶ 29.) Mr. Borrelli's death was attributed to bleeding in the right pleural cavity. (Def.'s 56.1 ¶ 32.) On May 22, 1999, a second autopsy was performed by the Cook County Medical Examiner's Office. (Def.'s 56.1 ¶ 33.) The Cook County Medical Examiner attributed Mr. Borrelli's death to hemothorax due to thoracentesis due to fatty liver. (Def.'s 56.1 ¶ 34.)

The improperly performed thoracentesis caused a hemothorax[5], which caused Mr. Borrelli's death on May 20, 1999. (Def.'s 56.1 ¶¶ 19, 20, 21, 22.)

On August 14, 1999, the Trust filed a claim under the policy for death benefits under the policy, claiming Mr. Borrelli's death was due to medical malpractice and was considered an accident. (Def.'s 56.1 ¶ 36.)

UnumProvident reviewed Mr. Borrelli's medical records and the nature of his death in connection with the Trust's claim for accidental death benefits and determined that Mr. Borrelli's death did not meet the requirements for the payment of accidental death benefits under the Policy. (Def.'s 56.1 ¶ 37.) On March 2, 2000, UnumProvident denied the Trust's claim for death benefits allegedly due under the policy because it believed that Mr. Borrelli's cause of death was not covered under the policy's provisions. (Def.'s 56.1 ¶¶ 38, 39.) Specifically, UnumProvident denied the claim based on its physician's determination that:

> Mr. Borelli [sic] had a right thoracentesis performed for a persistent right pleural effusion, which resulted from his chronic liver disease. Approximately 3 hours later, he died as a result of massive bleeding from the thoracentesis site into the right chest cavity. . . . Mr. Borelli [sic] had laboratory evidence of a bleeding tendency resulting from his chronic liver disease, which significantly contributed to death. The loss of

---

[5]Hemothorax is the presence of blood in the pleural space.

life is not an accidental bodily injury direct and independent of all other causes."
(Def.'s 56.1 Ex. 1 at 4.)

The Trust appealed the denial of death benefits. (Def.'s 56.1 ¶ 41.) On January 24, 2001, UnumProvident upheld the denial of death benefits. (Def.'s 56.1 ¶ 42.) On September 6, 2001, Plaintiffs filed the instant action against UnumProvident, seeking a declaratory judgment that Mr. Borrelli's life insurance policy provided coverage and that, as a result of his allegedly accidental death, benefits are due to the Plaintiffs and alleging a breach of contract under the policy.

## DISCUSSION

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 and the matter is between citizens of different states. "Illinois law controls . . . because federal courts exercising . . . diversity jurisdiction must apply state law to matters of substantive law . . . ." *Timmerman v. Modern Indus.*, 960 F.2d 692, 696 (7th Cir. 1992).

"The insured has the burden of proving that his loss comes within the terms of his insurance policy." *Roberts v. Allstate Life Ins. Co.*, 243 Ill. App. 3d 658, 660 (1993); *see also Kolowski v. Metro. Life Ins. Co.*, 35 F. Supp. 2d 1059, 1061 (N.D. Ill. 1998) (noting that beneficiaries bear the burden of proving that the loss comes within the terms of the insurance policy). The construction of the provisions and terms of an insurance policy is a question of law. *Archer-Daniels-Midland Co. v. Phoenix Assurance Co. of New York*, 975 F. Supp. 1124, 1126 (S.D. Ill. 1997).

> In construing an insurance policy, the Court's task is to ascertain the intent of the parties to the contract, "with due regard to the risk undertaken, the subject matter that is insured and the purposes of the entire contract." . . . If the policy language is unambiguous, there is no issue of material fact, and the Court must determine the contract's meaning as a matter of law affording the contract its plain, ordinary, and

popular meaning.

*Archer-Daniels-Midland*, 975 F. Supp. at 1126 (quoting *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 108 (1992)) (internal citations and footnote omitted).

The policy provided Mr. Borrelli with coverage for death or bodily injury "resulting directly and independently of all other causes from bodily injuries caused by accident" and excluded losses caused by illness, disease or body infirmity. The policy does not define the term "accident". Under Illinois law, "[a]n accident is 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.'" *Litman v. Monumental Life Ins. Co.*, 289 Ill. App. 3d 181, 183 (1997).

UnumProvident argues that summary judgment is appropriate because (1) Plaintiffs have failed to establish that Mr. Borrelli's death was accidental as defined under the policy and (2) Mr. Borrelli's death was not accidental because it was caused by medical malpractice, which is not considered accidental under Illinois law.

UnumProvident argues that Plaintiffs have not established that Mr. Borrelli's death resulted "directly and independently of all other causes from bodily injury caused by accident" because Mr. Borrelli's death was caused, at least in part, by his liver disease. However, the Illinois courts have rejected the idea that an insured whose preexisting condition contributes to his death cannot recover.

> [A]n injury compensable under [an] accident policy may be proximately caused by an accident even where the insured was predisposed to the injury due to a preexisting illness or condition .... The clause, "directly and independently of all other causes," is not synonymous with a finding that, for an injury to be compensable, it must be the result of an accident that is in no way related to a preexisting illness. Where the insured suffers from a preexisting condition that makes an accidental injury more likely, that accident may still lead "directly and

independently of all other causes" to a compensable injury.
*Faulkner v. Allstate Life Ins. Co.*, 291 Ill. App. 3d 706, 712 (1997); *see also River v. Commercial Life Ins. Co.*, No. 96 C 4022, 1997 WL 603871, at *6 (N.D. Ill. Sept. 25, 1997) (citing *Carlson v. New York Life Ins. Co.*, 76 Ill. App. 2d 187 (1966)) ("The courts have required insurers to provide benefits under the 'injury provision' as long as the accident is the proximate cause of the disability.").

Here, it is undisputed that Mr. Borrelli suffered from chronic liver disease. However, there are genuine issues of material fact[6] as to whether Mr. Borrelli's death was accidental or proximately caused by his chronic liver disease. Plaintiffs have not presented any evidence as to the cause of Mr. Borrelli's death. UnumProvident's physician opined that "Mr. Borelli [sic] had laboratory evidence of a bleeding tendency resulting from his chronic liver disease, which significantly contributed to death." (Def.'s 56.1 Ex. I at 4.) However, UnumProvident has not presented any evidence that NASH causes increased susceptibility to bleeding. The first autopsy attributed Mr. Borrelli's death to bleeding in the right pleural cavity which was caused by the improperly performed thoracentesis. The second autopsy stated that Mr. Borrelli "died as a result of Hemothorox [sic], due to Thoracentesis due to Fatty Liver." (Def.'s 56.1 Ex. F at 5.) This evidence establishes that there is a genuine issue of material fact as to the proximate cause of Mr. Borrelli's death.

---

[6]Plaintiffs argue that there are no genuine issues of material fact as to whether the improperly performed thoracentesis caused Mr. Borrelli's death because paragraph 22 of UnumProvident's Statement of Undisputed Material Facts states that medical malpractice was the proximate cause of Mr. Borrelli's death. This argument is meritless. Paragraph 22 is not a statement of *fact* but rather UnumProvident's *legal conclusion* and, as such, is inappropriate in a Local Rule 56.1 Statement of Undisputed Material Facts and will be disregarded.

Moreover, UnumProvident directs the Court to *Senkier v. Hartford Life & Accident Insurance Co.*, 948 F.2d 1050 (7th Cir. 1991) and *Litman* for the proposition that "a medical mishap is not an accident under an insurance policy that provides benefits for accidental injuries that cause the death of the insured." (Def.'s Mem. Supp. Mot. Summ. J. at 9.) However, as this Court previously noted in its Memorandum Opinion and Order dated January 17, 2002,

> *Senkier* and *Litman* are distinguishable because, in those cases, the insurance policy contained medical exclusionary clauses which expressly excluded loss caused by *medical treatment*. Mr. Borelli's [sic] insurance policy does not contain a medical exclusionary clause excluding coverage of loss resulting from treatment of the illness he suffered but that caused by *illness, disease*, etc.

*Michael J. Borrelli Family Trust v. UnumProvident Corp.*, No. 01 C 6938, 2002 WL 63935, at *3 (N.D. Ill. Jan. 17, 2002). Because there are genuine issues of material fact as to whether Mr. Borrelli's death was accidental or proximately caused by his chronic liver disease, UnumProvident's motion for summary judgment is denied.

As mentioned above, UnumProvident has also filed a motion to strike Plaintiffs' motion for summary judgment as untimely. In an order dated May 26, 2002, the Court ordered the parties to file cross-motions for summary judgment on or before June 25, 2002. However, on July 16, 2002, Plaintiffs filed their cross-motion for summary judgment with their response to UnumProvident's motion for summary judgment. Therefore, Plaintiffs' cross-motion for summary judgment is not properly before the Court per this Court's May 26, 2002 order; and Plaintiffs' motion for summary judgment, in the alternative to the above stated disposition on the merits, is denied as untimely.

## CONCLUSION

For the reasons stated herein, UnumProvident's Motion to Strike Plaintiffs' Cross-Motion for Summary Judgment and Deny Plaintiffs' Requested Summary Judgment Relief is granted. UnumProvident's Motion for Summary Judgment and Plaintiffs' Cross Motion for Summary Judgment are denied.

**IT IS SO ORDERED.**

John W. Darrah, Judge
United States District Court

Date: October 10, 2002